UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOROTHY B.,

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

**DECISION AND ORDER**

1:21-CV-00259 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Dorothy B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1]  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 9;

---

[1]  This action was originally brought by plaintiff Sue B. pursuant to Titles II and XVI of the Act.  (Dkt. 1).  Sue B. is now deceased, and pursuant to the Court's order dated January 30, 2023, her mother, Dorothy B., was substituted to represent Sue B.'s claim on behalf of her children.  (Dkt. 26).  Although the ALJ considered both Plaintiff's Title II and Title XVI claim, Sue B.'s Title XVI claim was extinguished upon her death.  (*Id*. at 3); *see also Joseph L. v. Comm'r of Soc. Sec.*, No. 1:22-cv-00033-UNA, 2023 WL 5344932, at *1 (W.D.N.Y. Aug. 21, 2023) (explaining that under the regulations, a Title XVI claim is extinguished when a deceased individual was an adult and had no surviving spouse at the time of her death).  Accordingly, only Plaintiff's Title II claim remains at this juncture.

Dkt. 12).   For the reasons discussed below, the Commissioner's motion (Dkt. 12) is granted, and Plaintiff's motion (Dkt. 9) is denied.

## **BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on March 27, 2014. (Dkt. 6 at 149-50, 174).[2]  In her applications, Plaintiff alleged disability beginning on June 30, 2010, due to bipolar disorder, anxiety, depression, scoliosis, and lower back problems. (*Id.* at 151, 162, 174).  Plaintiff's applications were initially denied on July 18, 2014.  (*Id.* at 174, 197-204).  A hearing was held before administrative law judge ("ALJ") William M. Weir in Buffalo, New York, on June 30, 2017.  (*Id.* at 85-140).  On October 10, 2017, the ALJ issued an unfavorable decision.  (*Id.* at 171-86).  Plaintiff requested Appeals Council review, and her request was granted on March 20, 2019. (*Id*. at 193-96).  Plaintiff's case was remanded for another hearing and a new decision.  (*Id*.).

A second hearing was held before the ALJ on December 16, 2019.  (*Id*. at 58-84). On March 26, 2020, the ALJ issued an unfavorable decision.  (*Id*. at 24-49).  Plaintiff requested Appeals Council review; her request was denied on December 23, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 7-13).  This action followed.

---

[2]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and

work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted);

*see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since June 30, 2010, the alleged onset date.  (Dkt. 6 at 30).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease; obesity; an anxiety disorder; and a substance use disorder." (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of asthma, right eye cellulitis, hepatitis C, dysplasia of her cervix, possible urinary retention, pneumonia, and a buttock boil, were non-severe.  (*Id.* at 31).  With respect to Plaintiff's representations that she suffered from carpal tunnel syndrome and cervical cancer, the ALJ concluded that these were not medically determinable impairments.  (*Id.*).

At step three, the ALJ found that Plaintiff's impairments, including her substance use disorder, met the criteria of Listing 12.06.  (*Id.* at 31-37).

The ALJ next found that if Plaintiff stopped her substance use, she would still have severe impairments.  (*Id.* at 37).  However, the ALJ concluded that if Plaintiff stopped substance use, she would not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listings 1.04, 12.03, 12.04, 12.06, and 12.15 in reaching his conclusion, as

well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p.  (*Id.* at 37-40).

Before proceeding to step four, the ALJ determined that if Plaintiff stopped her substance use, she would retain the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> she cannot crawl.  She can occasionally bend, kneel, and crouch.  She can have no public exposure, but can have occasional exposure to co-workers and supervisors.  She should perform simple, repetitive, one- and two-step tasks.  She should not perform complex work, which is defined as work involving multiple simultaneous goals or objectives or the need to independently set quality, quantity, or method standards.

(*Id.* at 40).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 47).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of photocopy machine operator and order caller.  (*Id.* at 49).  Accordingly, the ALJ found that, because substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that (1) the ALJ's finding that Plaintiff's substance use disorder was material to the disability determination was based on legal error and is not supported

by substantial evidence, including because it is not possible to separate Plaintiff's co-occurring mental health impairments from her substance use; (2) the mental RFC determination is not supported by substantial evidence, including because the ALJ relied on stale medical opinions, failed to give proper weight to the opinion offered by Tracy Sherman, LMHC, and arbitrarily determined that Plaintiff could have no exposure to the public, but occasional exposure to co-workers and supervisors; and (3) the physical RFC is not supported by substantial evidence, including because the ALJ failed to give proper weight to the opinions of Michael Ostolski, FNP, and Nicholas Varallo, M.D. (Dkt. 9-1 at 1, 18-39). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.    **Plaintiff's Substance Use Disorder**

Plaintiff's first argument is that the ALJ erred in finding that her substance use disorder was material to the disability determination. (Dkt. 9-1 at 18). Specifically, Plaintiff contends that the ALJ mischaracterized the record, cherry-picked evidence, and ignored periods of abstinence, including evidence from Plaintiff's extended periods of sobriety, which indicated that she still suffered from depression and anxiety. (*Id*. at 18-23). Plaintiff also argues that her mental health conditions and substance use are "inextricably linked," and that there is a lack of evidence supporting the ALJ's conclusion that Plaintiff's mental status findings improved without substance use. (*Id*. at 23-24). Plaintiff contends that the case should be remanded solely for calculation and payment of benefits. (*Id*. at 24-26). In response, the Commissioner contends that the ALJ properly considered evidence of Plaintiff's mental impairments in concluding that she had only mild

or moderate limitations when not using substances, and that Plaintiff failed to meet her burden of showing that substance use was not a material factor to the disability determination.  (Dkt. 12-1 at 7-9).

"Under the 1996 amendments to the Social Security Act, an individual 'shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Mims v. Apfel*, 182 F.3d 900, at *1 (2d Cir. 1999) (citation omitted).  Accordingly, "[w]hen there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

"The 'key factor' in determining whether alcoholism or drug addiction is [a] contributing factor material to the determination of disability is whether the claimant would still meet the definition of disabled under the Act if [s]he stopped using alcohol or drugs." *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005); *see also Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 (2d Cir. 2018) ("Drug addiction is a material factor if the individual would not be found disabled if she stopped using drugs."); *Cage*, 692 F.3d at 123 ("The critical question is 'whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.'" (quoting 20 C.F.R. § 416.935(b)(1)).  "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to . . . benefits.  If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant

would not be eligible for benefits." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 181 (E.D.N.Y. 2011) (citations omitted).

The claimant bears the burden of proof of showing immateriality, *Cage*, 692 F.3d at 123-24, which requires her "to show through evidence in the record that [s]he would be disabled even if there was no substance abuse," *Wehrhahn v. Colvin*, 111 F. Supp. 3d 195, 205 (D. Conn. 2015). "[E]vidence from a period of abstinence is the best evidence for determining whether an [impairment] would improve to the point of nondisability." *Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *2 (W.D.N.Y. Feb. 20, 2020) (citation omitted); *see also Rowe v. Colvin*, No. 8:15-cv-00652 (TWD), 2016 WL 5477760, at *8 (N.D.N.Y. Sept. 29, 2016) ("The medical evidence also supports a finding that Plaintiff's functioning improved since Plaintiff abstained from alcohol, including periods of 'brief sobriety.'").

Plaintiff's contention that the ALJ's materiality determination is not supported by substantial evidence is belied by the record. As reflected in the written determination, the ALJ engaged in a lengthy discussion regarding the implications of Plaintiff's substance use on her functional limitations, including a detailed discussion of Plaintiff's treatment notes and opinions regarding mental functioning during periods of substance use. (Dkt. 6 at 31-37). Thereafter, the ALJ explained why he found that, during periods of abstinence, Plaintiff would not have an impairment meeting the Listings—in other words, why her substance use was material to the disability determination. (*See id*. at 38-40; *see also id*. at 39 ("During periods that appear to align with abstinence from substances, such as in July 2014, January 2019, May 2019, and June 2019, the claimant has had fair or good insight

and judgment," whereas "her insight and judgment are limited when she is using substances")).  In doing so, the ALJ applied the Psychiatric Review Technique, concluding that Plaintiff would have only mild limitations in the areas of understanding, remembering, or applying information and interacting with others, and moderate limitations in the areas of concentrating, persisting, and maintaining pace, and for adapting or managing herself. (*Id*. at 38-39).

With respect to Plaintiff's ability to understand, remember, or apply information, the ALJ noted that despite Plaintiff's testimony that she could not care for her children without the assistance of her mother, she also reported an ability to perform activities of daily living during her 2014 consultative examination, and that her attention, concentration, memory, and cognition/intelligence have been normal during periods of sobriety.  (*Id*. at 38).  With respect to Plaintiff's ability to interact with others, the ALJ explained that during periods of sobriety, and even when feeling anxious or depressed, Plaintiff was generally appropriately groomed and cooperative with providers and that she reported ongoing socialization with family (but limited relationships with friends continuing to use drugs), whereas Plaintiff reported significantly deteriorated family relationships due to drug use. (*Id*. at 39).  For concentrating, persisting, or maintaining pace, the ALJ noted that, during periods of sobriety, Plaintiff reported at her 2014 consultative examination that she could engage in activities of daily living, including personal care, childcare, and household chores, as well as that she had normal mental status examinations, which reflected normal attention, concentration, memory, and cognition.  (*Id*.).  Finally, for adapting or managing herself, the ALJ noted Plaintiff's daily functioning during periods of abstinence, that she

has been appropriately groomed and cooperative with providers, and engaged in ongoing socialization with her family. (*Id.*).

In support of these conclusions, the ALJ cited to evidence from Plaintiff's consultative examination conducted by Susan Santarpia, Ph.D.[3] in 2014, as well as Plaintiff's testimony at her administrative hearing. (*Id.* at 38-40). Dr. Santarpia conducted an in-person examination of Plaintiff on July 10, 2014. (*See id.* at 727-31). Dr. Santarpia acknowledged Plaintiff's psychiatric diagnoses, as well as her drug dependence, which were currently in remission. (*Id.* at 730). However, Dr. Santarpia also found that Plaintiff was cooperative, well-groomed, and oriented to person, place, and time, and further that she had adequate speech and language, coherent and goal-directed thought processes, intact attention, concentration, and memory skills, and fair insight and judgment. (*Id.* at 728-29). Plaintiff's cognitive functioning was average, and she was able to perform most activities of daily living. (*Id.* at 729). *See Ervin-Atkinson*, 2020 WL 830434, at *3 (noting that the ALJ properly "focused on the record evidence from Plaintiff's periods of abstinence from cocaine use in determining Plaintiff's RFC," including that the ALJ "gave significant

---

[3]    Plaintiff contends, in conclusory fashion, that Dr. Santarpia's opinion is stale because it was offered in 2014. (*See* Dkt. 9-1 at 20). However, simply because the opinion is from 2014 does not render it stale. The mere passage of time does not render a medical opinion stale. Unless subsequent evidence undermines the basis for the medical opinion, an ALJ may properly rely on a medical opinion of record despite a significant lapse in time. *See, e.g., Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965 (MAT), 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018) ("A consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chance in the claimant's condition."). Plaintiff fails to identify any evidence amounting to a meaningful deterioration in her condition since 2014.

weight to the opinion of consultative examiner Dr. Santarpia, who examined Plaintiff on April 23, 2015 during a period of sobriety").

In arguing that the ALJ erred by finding that her substance use disorder was material to the disability determination, Plaintiff cites to certain portions of the record she contends demonstrates that she experienced limitations during periods of abstinence and that the ALJ cherry-picked evidence from the record.  (*See, e.g.*, Dkt. 9-1 at 21-24).  Plaintiff's argument in this respect is misplaced.  It is the ALJ's duty to resolve conflicts in the record. *See Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *6 (W.D.N.Y. Feb. 22, 2021) ("The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts.").  Accordingly, while "Plaintiff may disagree with the ALJ's conclusion," the Court "must defer to the Commissioner's resolution of conflicting evidence and reject the ALJ's findings only if a reasonable factfinder would have to conclude otherwise."  *Daniel G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1211 (WBC), 2023 WL 155426, at *7 (W.D.N.Y. Jan. 11, 2023) (citations and quotations omitted).  It is clear to the Court how the ALJ arrived at the determination that Plaintiff's substance use disorder was material to the disability determination and that this conclusion is supported by the record, and therefore this is not a case where a reasonable factfinder would reach a different conclusion.  For those reasons, remand is not required on this basis.

## B.    **The Mental and Physical RFC**

Plaintiff's next arguments challenge the ALJ's assessment of the mental and the physical RFC.  In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."

*Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."  *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

### 1.  The Mental RFC

In support of her argument that the ALJ erred in assessing the mental RFC, Plaintiff raises the following arguments: the opinions offered by Dr. Santarpia and J. Straussner, Ph.D., the state agency review psychologist, are stale; the ALJ failed to give proper weight to the more recent opinions of LMHC Sherman; and the ALJ arbitrarily determined that Plaintiff could have no exposure to the public, but occasional exposure to co-workers and supervisors.  (Dkt. 9-1 at 26-35).  In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's mental impairments, the medical opinions in the record are

not stale because Plaintiff has failed to show a deterioration in her condition, and the ALJ properly evaluated the opinion offered by LMHC Sherman. (Dkt. 12-1 at 9-14).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id*. Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific . . . ." *Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) (internal quotation marks omitted).

An opinion offered by a non-acceptable medical source, such as a nurse practitioner, is not entitled to controlling weight. *See Beckers v. Colvin*, 38 F. Supp. 3d 362, 371

(W.D.N.Y. 2014). However, the opinions of non-acceptable medical sources may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id*. (citation omitted).

The Court turns first to the ALJ's reliance on the opinions offered by Dr. Santarpia and Dr. Straussner, which Plaintiff contends was improper because those opinions were stale. (Dkt. 9-1 at 26). Specifically, Plaintiff argues that these opinions were rendered five years before the second administrative hearing. (*Id*. at 27). As noted above, Dr. Santarpia examined Plaintiff in July 2014. (Dkt. 6 at 727). After conducting an examination, Dr. Santarpia concluded that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. (*Id*. at 729-30). Plaintiff has mild-to-moderate impairment for performing complex tasks independently. (*Id*. at 730). Dr. Straussner also offered an opinion as to Plaintiff's mental functioning in July 2014. (*Id*. at 156). Dr. Straussner concluded that Plaintiff's mental functioning resulted in either mild or moderate limitations. (*Id*.).

Plaintiff's staleness argument is premised on the fact that the opinions offered by Drs. Santarpia and Straussner were rendered in 2014, but she fails to demonstrate how her condition deteriorated after these opinions were offered. As explained above, the mere passage of time does not render a medical opinion stale. Unless subsequent evidence undermines the basis for the medical opinion, an ALJ may properly rely on a medical opinion of record despite a significant lapse in time. *See, e.g., Cruz*, 2018 WL 3628253,

at *6; *see also Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation Camille cites imposes an unqualified rule that a medical opinion is superseded by additional material in the record, and in this case the additional evidence does not raise doubts as to the reliability of Dr. Kamin's opinion."); *Hernandez v. Colvin*, No. 15-CV-7664 CJS, 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017) ("Plaintiff is incorrect to assert that a medical opinion is stale merely because it pre-dates other evidence in the record. . . ."). Here, Plaintiff states in conclusory fashion that her condition "substantially deteriorated" (*see* Dkt. 9-1 at 28), and she fails to identify evidence amounting to a meaningful deterioration in her condition since 2014. Accordingly, remand is not required on this basis.

Plaintiff next argues that the ALJ failed to properly evaluate the more recent opinion evidence offered by LMHC Sherman. (*Id*.). Plaintiff cites to opinions offered by LMHC Sherman from September 2016 through November 2019, but she focuses specifically on the opinions dated March 15, 2017, and November 18, 2019. (*Id*.). Plaintiff acknowledges that these opinions are not entitled to special deference, but argues that the ALJ should have afforded these "incredibly important" opinions more weight. (*Id*. at 26, 28-32).

LMHC Sherman offered several opinions relative to Plaintiff's functioning between January 19, 2015, and November 18, 2019. The ALJ discussed each of these opinions at length in the written determination. (*See* Dkt. 6 at 45 (affording January 19, 2015, April 27, 2015, July 6, 2015, and October 7, 2015 employability assessments of Plaintiff's mental functioning "great weight" during periods without substance use, and "little weight" to opinion that Plaintiff had no physical limitations); *id*. at 45-46 (discussing September 13,

2016 employability assessment form, and giving partial weight to assessment of physical and mental limitations); *id*. at 46 (giving March 2017 opinion "little weight" since LMHC Sherman had not seen Plaintiff in over two years, and because it was not supported by Plaintiff's activities of daily living and improved mental status findings during periods of abstinence from substance use); *id*. (giving May 2017 statement regarding Plaintiff's GAF score "little weight"); *id*. (giving September 11, 2017 statement that Plaintiff was unable to work "little weight"); *id*. (discussing August 28, 2019 employability assessment, and affording "great weight" to opinion regarding Plaintiff's mental functioning during periods without substance use, and "little weight" to opinion that Plaintiff had no physical limitations); *id*. at 47 (discussing November 18, 2019 medical source statement, which ALJ afforded "little weight" during periods of abstinence)).   However, given Plaintiff's argument, the Court will focus more specifically on the March 15, 2017, and November 18, 2019 opinions offered by LMHC Sherman.

LMHC Sherman completed a medical source statement dated March 15, 2017, and assessed that Plaintiff had marked limitations in her ability to understand, remember, and carry out simple instructions, and to make judgments on simple work-related decisions, and extreme limitations in her ability to understand, remember, and carry out complex instructions, and to make judgments on complex work-related decisions.  (*Id*. at 836). Plaintiff had marked limitations for interacting appropriately with supervisors, and extreme limitations for interacting with the public, interacting with co-workers, and responding to usual work situations and to changes in a routine work setting.  (*Id*. at 837).  LMHC Sherman opined that Plaintiff's anxiety contributed to these limitations.  (*Id*. at 836-37).

The ALJ gave LMHC Sherman's March 2017 opinion "little weight," including because LMHC Sherman had not seen Plaintiff in more than two years, and also because the limitations were not supported by Plaintiff's activities of daily living and improved mental status findings during periods of abstinence from substance use, which the ALJ discussed at length in the written determination.  (*Id*. at 46; *see also id*. at 38-40, 42-43).

The Court finds that the ALJ's assessment of this opinion was proper.[4]  The ALJ explained why he afforded the opinion only "little weight," including because it was inconsistent with other evidence in the record which, as the ALJ discussed in detail in the written determination, demonstrated improved mental functioning during periods of abstinence.  An ALJ may reject a medical opinion from even a treating physician if the opinion is not supported by the record, *see Halloran*, 362 F.3d at 32, and he was entitled to reject LMHC Sherman's opinion on this basis as well.

---

[4]  Plaintiff contends that the ALJ erred when he discussed LMHC Sherman's March 2017 opinion because the ALJ's statement that LMHC Sherman had not seen Plaintiff in more than two years was not accurate, and in fact Plaintiff had several visits with LMHC Sherman during that time period.  (Dkt. 9-1 at 31-32).  The Court does not find that this misstatement requires reversal or remand.  *See Conyers v. Comm'r of Soc. Sec.*, No. 17-CV-05126 (BCM), 2019 WL 1122952, at *21 (S.D.N.Y. Mar. 12, 2019) (noting that one or two factual inaccuracies may amount to harmless error).  First, it is clear from the written determination that the ALJ acknowledged LMHC Sherman's ongoing relationship with Plaintiff.  Second, the ALJ offered two further reasons for affording only little weight to the March 2017 opinion, including because it was not supported by Plaintiff's activities of daily living, which were discussed at length in the written determination, and also because it was not supported by Plaintiff's improved mental status examinations during periods of abstinence from substance use.  The ALJ's discussion of LMHC Sherman's various opinions is detailed and spans multiple pages in the written determination, and even setting aside the statement regarding the frequency of visits, the ALJ's affording only "little weight" to the opinion offered by LMHC Sherman—who is not an acceptable medical source—is supported by substantial evidence.

LMHC Sherman completed another medical source statement in November 2019. (Dkt. 7 at 890).  LMHC Sherman found that Plaintiff was either "unable to meet competitive standards" or had "no useful ability to function" in every category of mental functioning, which LMHC Sherman opined was based on anxiety and depression.  (*Id*. at 892-93).  Plaintiff would be absent from work more than four days per month.  (*Id*. at 894).  The ALJ explained that he afforded this opinion "little weight," because "[a]lthough, as discussed in great detail in Finding 3 . . . I acknowledge that the claimant's mental functioning deteriorates greatly due to her substance use, this opinion is given little weight during periods of abstinence from substance use because, as discussed in detail . . . the record reveals improved mental status findings without substance use." (Dkt. 6 at 47).  For the same reasons the Court found that the ALJ's consideration of the March 2017 opinion was proper, it also finds that the ALJ's consideration of the November 2019 opinion was proper.  LMHC Sherman's opinion is not entitled to special deference, yet the ALJ thoroughly discussed her opinions and explained why he found them unpersuasive.  As explained by the ALJ, LMHC Sherman's assessment of Plaintiff's functioning is contradicted by other substantial evidence in the record, which demonstrates largely normal mental functioning during periods of abstinence from substance use.

Plaintiff argues that the ALJ should have re-contacted LMHC Sherman to obtain clarification on Plaintiff's GAF scores, including because she indicated that she would do so at the administrative hearing.  (Dkt. 9-1 at 31).  As explained above, LMHC Sherman offered approximately 10 opinions and/or medical statements, which the ALJ discussed at length in the written determination.  Further, some of these medical statements included

assessments of Plaintiff's work-related functional limitations, while the GAF scores, as explained by the ALJ in the written determination, provided only a "subjective snapshot assessment of functioning at one time," and therefore were not a reliable longitudinal picture of Plaintiff's mental functioning for a disability analysis.  (*See* Dkt. 6 at 46, 47); *see also Andrea L. v. Saul*, No. 3:18-CV-858 (CFH), 2019 WL 4170289, at *10 (N.D.N.Y. Aug. 30, 2019) ("The Court notes that as a global reference intended to aid in treatment, a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." (quotations and citation omitted)).  Given the nature of this evidence, coupled with the already voluminous record in this case, which included several opinions from LMHC Sherman, the ALJ was not required to further develop the record by re-contacting LMHC Sherman about the GAF scores.  *See Vay v. Comm'r of Soc. Sec.,* 382 F. Supp. 3d 267, 272 (W.D.N.Y. 2018) ("the ALJ's duty to develop the record is not limitless," and where there are no obvious gaps in the record, the ALJ is not required to seek additional information); *see also Amanda P. v. Comm'r of Soc. Sec.*, 545 F. Supp. 3d 40, 48 (W.D.N.Y. 2021) ("an ALJ is not necessarily required to obtain all of a plaintiff's medical records in making a disability determination").

Plaintiff also argues that the ALJ arbitrarily determined that Plaintiff could have no exposure to the public, but occasional exposure to co-workers and supervisors.  (Dkt. 9-1 at 32).  Plaintiff is incorrect.  As explained in the written determination, the ALJ based his assessment that Plaintiff could have occasional exposure to co-workers on Plaintiff's reports that she has ongoing socialization with family, that Plaintiff was cooperative with providers, and mental status examinations, which revealed that she had fair or good insight

and judgment.  (*See* Dkt. 6 at 39).  Further, Dr. Santarpia opined that Plaintiff could relate adequately with others and appropriately deal with stress within normal limits.  (*Id*. at 729-30).  This evidence supports the limitation to occasional interaction with co-workers and supervisors, and even a "moderate limitation in social interaction or ability to interact appropriately with the public, coworkers, or supervisors can be accommodated by a restriction of no more than occasional interaction."  *Alicia T. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06529-RJA, 2023 WL 4999844, at *5 (W.D.N.Y. Aug. 4, 2023).  Accordingly, Plaintiff's contention that the ALJ's determination was "arbitrary" is not supported by the record, and it is clear to the Court how the ALJ arrived at this assessed limitation.

### 2.  The Physical RFC

Plaintiff's final argument is that the physical RFC is not supported by substantial evidence.  (Dkt. 9-1 at 35).  Specifically, Plaintiff contends that the ALJ failed to give proper weight to the opinion of her treating providers, FNP Ostolski and Dr. Varallo.  (*Id*. at 35-38).  In response, the Commissioner argues that the ALJ was not required to defer to the opinion offered by FNP Ostolski because he is not an acceptable medical source, and also that the ALJ properly explained why he rejected Dr. Varallo's opinion.  (Dkt. 12-1 at 14-18).

The Court turns first to the opinion offered by FNP Ostolski.  FNP Ostolski offered an opinion dated May 15, 2013, and noted that Plaintiff would have moderate limitations for standing, sitting, lifting, carrying, pushing, pulling, bending, climbing, maintaining attention and concentration, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior, and that Plaintiff was "very limited" with

appearing able to function in a work setting at a consistent pace.  (Dkt. 7 at 877-78).  The

ALJ gave this opinion "partial weight" including because:

> "moderate" and "very limited" are not vocationally defined terms.
> Additionally, while the limitations with standing, lifting, carrying, pushing,
> pulling, bending, and climbing may be reasonably consistent with a reduced
> range of light exertion, the limitations with sitting are not supported by the
> evidence and the claimant's ongoing activities of daily living, as discussed
> in detail above.   Additionally, while the claimant may have marked
> "paragraph B" limitations during periods of substance use, the evidence
> reveals that she has largely normal mental status findings and activities of
> daily living in the absence of substance use.  Therefore, only the "moderate"
> limitations of maintaining attention and concentration and making simple
> decisions remain supported by the record if the claimant stopped substance
> use.

(Dkt. 6 at 44).  The Court finds that the ALJ's consideration and evaluation of this opinion

was proper.  Because FNP Ostolski is not an acceptance medical source, his opinion is not

entitled to controlling weight.  Despite this, the ALJ still provided a detailed explanation

as to why he did not find FNP Ostolski's opinion entirely persuasive, including because

the assessed limitations were not supported by the record, which is a proper rationale for

rejecting a medical opinion.

On May 30, 2017, Dr. Varallo opined that Plaintiff could perform low stress jobs,

could walk two-to-three city blocks, could sit or stand for 45 minutes at one time for a total

of four hours each in an eight-hour workday, would need to change positions throughout

the day, and could lift and carry up to twenty pounds frequently.  (*Id*. at 913-14).  Dr.

Varallo also noted that Plaintiff could frequently move her neck in all directions, hold her

head in a static position, and twist, and she could occasionally stoop, and rarely crouch,

squat, climb ladders, or climb stairs.  (*Id*. at 915).  Plaintiff had no limitations in her ability

to reach, handle, or finger.  (*Id*.).  Plaintiff's impairments were not likely to produce "good

days" and "bad days," and Dr. Varallo did not offer an opinion as to how many days per month Plaintiff would likely be absent from work.  (*Id*.).

The ALJ gave Dr. Varallo's opinion "partial weight."  (*Id*. at 47).  While acknowledging that Dr. Varallo was a long-time treating provider, the ALJ further explained that many of the limitations he assessed—including that Plaintiff would have "bad days," as well as the daily sitting, standing, and walking totals, and neck positions— were not supported by either his treatment notes or the record in general.  (*Id*.).

It is well-settled that a treating physician's opinion is not entitled to controlling weight where it is not supported by the record as a whole, or where it is contradicted by the physician's treatment records.  *See Halloran*, 362 F.3d at 32 ("[a]lthough the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record").  Here, the ALJ explained that he did not entirely credit Dr. Varallo's opinion with respect to Plaintiff's functioning because it was contrary to other medical evidence in the record.  For example, the ALJ discussed other opinion evidence in the record, Plaintiff's activities of daily living, imaging studies, and examination findings, which were contrary to Dr. Varallo's assessment of Plaintiff's functioning.  (*See, e.g.*, Dkt. 6 at 44-45 (discussing opinion offered by John Schwab, D.O., who examined Plaintiff in July 2014, at which time her musculoskeletal examination was largely within normal limits, and opined that Plaintiff was mildly limited for bending, lifting, and carrying); *see also id*. at 41 (discussing history of Plaintiff's degenerative disc disease, including that she

- 23 -

has not been prescribed assistive devices and can perform activities of daily living); *id*. at 41-42 (discussing positive imaging findings, which revealed herniations, but further noting largely normal examination findings and conservative treatment); *id*. at 42 (discussing Plaintiff's report that she stopped working "for other reasons" aside from her back condition, and that she was not able to return after she delivered a child on July 14, 2010)). Accordingly, the Court finds that the ALJ's assessment of Dr. Varallo's opinion was proper, and remand is not required on this basis.

In sum, the Court finds that the ALJ engaged in a detailed analysis of the medical evidence, including the medical opinion evidence, and that he properly weighed this evidence. Further, the ALJ specifically explained how he assessed Plaintiff's mental and physical limitations (*see, e.g.*, *id*. at 38-39, 47), and those limitations are supported by substantial evidence in the record. Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment in favor of Defendant and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 15, 2023
        Rochester, New York